**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 95-50048**
**Summary Calendar**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**SHERRILL P. LANDES, and**
**LARS NELSON BORNKESSEL,**

**Defendants-Appellants.**

Appeal from the United States District Court
For the Western District of Texas
(SA-94-CR-77-1)

October 31, 1995

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

PER CURIAM:[*]

### BACKGROUND

The Federal Bureau of Investigation (FBI) in San Antonio, Texas became aware of an increasing number of complaints regarding a 1993 local telemarketing enterprise. The FBI determined that the

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

enterprise was divided into two companies, Hugs and Not Drugs, also known by the acronym "HAND," and Nationwide Marketing. The evidence at trial indicated that both companies were owned and controlled by Sherrill Landes.

The trial evidence indicated that defendant Lars Bornkessel began working for HAND in September 1993 as a sales representative and later moved to Nationwide in the same capacity. From about January until March 1994, Bornkessel worked as assistant manager for Nationwide. FBI Special Agent Christopher Graham testified that Landes' companies had revenues of $2,737,744; that Bornkessel's own sales accounted for $58,774.89; and that Nationwide's sales from January to March 1994 totalled $381,937.96. Graham also testified that a document reflecting Nationwide's sales for January and February 1994 indicated sales of around $300,000 but did not indicate sales by Bornkessel.

FBI Special Agent Michael Lemoine testified that Landes opened bank accounts for HAND and Nationwide on December 20, 1993. Between December 1993 and March 1994, Landes deposited $166,000 into the HAND account and $420,000 into the Nationwide account. Lemoine also testified that Bornkessel sold $12,583 at HAND and $43,413 at Nationwide and received commissions of more than $13,000.

The Probation Officer determined that Bornkessel had generated losses of $35,185.63 to victims as a salesman at Nationwide and that Nationwide had generated $831,044 in losses to victims while Bornkessel worked as assistant manager. The probation officer

based Bornkessel's offense level on losses of $866,299.63. Bornkessel objected to the amount on which his offense level was based, contending that his offense level should be based on losses of $58,774.89. The Government also objected to the amount of losses upon which Bornkessel's offense level was based. The Government contended that Bornkessel should be held responsible for losses of $50,685.25 from his sales between September and December 1993 and $381,937.96 from total sales while he was assistant manager at Nationwide. The probation officer stood by the losses indicated in the PSR, indicating that those were the most recent figures provided by the FBI. The district court adopted the PSR; sentenced Bornkessel to three concurrent 57-month terms of imprisonment; and ordered Bornkessel to pay restitution of $866,229.63.

## OPINION

On July 5, 1995, Gilbert Carter, who avers that he is Landes' next of kin, filed a motion to substitute himself for Landes. Carter avers that Landes died on June 25, 1995. Carter's motion was granted. The Government agrees that Landes is dead and contends that Landes' appeal should be dismissed.

"[T]he death of a criminal defendant pending an appeal of his or her case abates, *ab initio*, the entire criminal proceeding." **United States v. Asset**, 990 F.2d 208, 210 (5th Cir. 1993). The abatement rule does not apply to an order of restitution that is intended to compensate victims rather than punish a defendant. In such a case, the restitution order is appealable. **Id**. at 214.

3

Carter indicated in his motion that he wished to preserve the rights of Landes' estate regarding restitution. Carter, however, did not indicate any issues he wished to raise regarding restitution and Landes did not raise any contentions regarding restitution before he died. Because restitution is not at issue in Landes' case, this Court will dismiss Landes' appeal and remand his case to the district court with instructions to dismiss the indictment against him. See **United States v. Pauline**, 625 F.2d 684, 685 (5th Cir. 1980). This does not affect the restitution order.

Bornkessel contends that the district court erred by declining to give the jury his proposed instruction regarding his theory that he had acted in good faith during his employment with Landes. Bornkessel proposed an instruction indicating that the jury could not find he harbored an intent to defraud if he acted in good faith. The district court rejected the proposed instruction.

"A trial court's refusal to include a requested instruction in the jury charge is reviewed under an abuse of discretion standard, and the court is afforded substantial latitude in formulating its instructions." **United States v. Storm**, 36 F.3d 1289, 1294 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1798 (1995). Failure to give a good-faith instruction is not reversible error when the district court gives a detailed instruction on specific intent and the defendant is able to argue good faith to the jury. **Id**.; **United States v. Rochester**, 898 F.2d 971, 978 (5th Cir. 1990).

4

The district court instructed the jury that the term "willfully" means that "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." Additionally, Bornkessel argued good faith to the jury. The district court did not abuse its discretion by rejecting Bornkessel's proposed instruction.

Bornkessel next contends that the district court erred by basing his offense level on losses of $866,229.63, arguing that his offense level should have been based on losses of $55,996 or $58,774.89. Bornkessel also contends that the district court's error resulted in an erroneous restitution order. The Government concedes that the amount of loss on which Bornkessel's offense level is based is not supported by the record. The Government argues that the record supports basing the offense level on losses of between $360,000 and $500,000.

The guideline provision relevant to Bornkessel's fraud convictions provides that the offense level should be determined in part on the amount of loss caused by the offense. U.S.S.G. § 2F1.1(b)(1). The counts upon which Bornkessel was convicted are subject to grouping under the guidelines. § 3D1.2(d). The district court therefore could have attributed to Bornkessel as relevant conduct "all acts and omissions [aided, abetted, procured, or caused by him or reasonably foreseeable acts of others in furtherance of joint criminal activity] that were part of the same

5

course of conduct or common scheme or plan as the offense of conviction".  § 1B1.3(a)(2).

"Presentence reports generally bear indicia of reliability sufficient to permit reliance thereon at sentencing[.]" **United States v. Gracia**, 983 F.2d 625, 629 (5th Cir. 1993) (footnote omitted).  Disputed facts in a PSR must have an adequate evidentiary basis to be adopted by the court.  **United States v. Valencia**, 44 F.3d 269, 274 (5th Cir. 1995).  "Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." **United States v. Elwood**, 999 F.2d 814, 817-18 (5th Cir. 1993).

The probation officer stated that the FBI's investigation indicated sales by Bornkessel from September to December 1993 of $35,185.63 and losses generated by Nationwide from January to March 1994 of $831,044.  Beyond identifying the source of his information, the probation officer provided no specifics indicating the evidentiary basis for the information.  The testimony at trial indicated that Bornkessel's sales at HAND and Nationwide totalled $55,996; that losses at Nationwide during Bornkessel's tenure as assistant manager at Nationwide totalled $381,937.96; and that Landes deposited a total of $586,000 into HAND's and Nationwide's bank accounts between December 1993 and March 1994.

The trial testimony does not support the probation officer's determination regarding the amount of loss attributable to Bornkessel.  Our review of the record and evidence has found no evidence supporting the PSR.  Because the PSR lacks sufficient

opin\95-50048.opn

6

indicia of reliability upon which to base Bornkessel's sentence, this Court will vacate Bornkessel's sentence and remand his case for resentencing.

Appeal dismissed as to Landes and case remanded to district court for dismissal of indictment. Conviction of Bornkessel is affirmed. Sentence of Bornkessel is vacated and case is remanded for resentencing as to Bornkessel.